# United States Tax Court

T.C. Memo. 2023-9

ROBERT B. LUCAS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 2808-20.                                      Filed January 17, 2023.

————

Robert B. Lucas, pro se.

*Clint T. Hale* and *Jeffrey L. Heinkel*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

URDA, *Judge*: Petitioner, Robert B. Lucas, challenges the Internal Revenue Service's (IRS) determination of a federal income tax deficiency of $4,899 for his 2017 tax year. The parties dispute the proper treatment of a distribution Mr. Lucas received from a qualified retirement plan in 2017 and the applicability of section 72(t)(1),[1] which provides for additional tax on premature distributions from qualified retirement plans. We will uphold the Commissioner's determinations.

## FINDINGS OF FACT

This case was tried in September 2021 at our San Diego, California, remote trial session (via Zoomgov). We draw the following

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary values to the nearest dollar.

[*2] facts from the testimony and other evidence admitted at trial, as well as the parties' pleadings. Mr. Lucas lived in California when he timely filed his petition.

In 2017 Mr. Lucas worked as a software developer at Life Cycle Engineering where he had been employed for approximately four years. He provided financial support to his children, paying for his daughter's nursing education at San Diego State University and providing housing for his son.

Mr. Lucas began to experience financial problems when he lost his job in 2017. To make ends meet, he obtained a distribution of $19,365 during that year from a section 401(k) plan account administered by Matrix Trust Co. (Matrix). He had not reached 59 1/2 years old at the time, and Matrix accordingly reported this amount as an early distribution with no known exception on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.[2]

For his part, Mr. Lucas reported the distribution on his 2017 federal income tax return but did not include it in his taxable income. Mr. Lucas had been diagnosed with diabetes in 2015, which he had (effectively) treated with insulin shots and other medications. His return reflected his understanding that the distribution did not constitute income because of his medical condition.

The IRS subsequently issued Mr. Lucas a notice of deficiency for his 2017 tax year. The notice determined a deficiency of $4,899 based on the inclusion of the retirement plan distribution in his 2017 gross income and the ten-percent additional tax imposed by section 72(t).

OPINION

I.   *Burden of Proof*

The IRS's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In cases involving failure to report income, the Court of Appeals for the Ninth Circuit, to which an appeal in this case

---

[2] The Form 1099-R reflected a distribution code of "1," which represents "an early distribution with no known exceptions to being taxable." *See Ball v. Commissioner*, T.C. Memo. 2020-152, at *5.

**[\*3]** would ordinarily lie, *see* I.R.C. § 7482(b)(1)(A), has held that the Commissioner must establish "some evidentiary foundation" linking the taxpayer to an alleged income-producing activity before the presumption of correctness attaches to the deficiency determination, *Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977). Once the Commissioner has established such a foundation, the burden of proof shifts to the taxpayer to prove that he is entitled to an exclusion from gross income. *See Simpson v. Commissioner*, 141 T.C. 331, 338–39 (2013), *aff'd*, 668 F. App'x 241 (9th Cir. 2016).

Mr. Lucas concedes that he received the distribution in question, and the Commissioner thus has satisfied his initial burden. Mr. Lucas bears the burden of proving that he is entitled to an exclusion from gross income.

II.     *Treatment of Distribution*

Gross income includes all income from whatever source derived except as otherwise provided. I.R.C. § 61(a). This definition includes distributions from employees' trusts. *See* I.R.C. §§ 61(b), 72(a)(1), 402(a), (b)(2); *see also Darby v. Commissioner*, 97 T.C. 51, 58 (1991). One type of employees' trust is commonly referred to as a "401(k) plan," a qualified cash or deferred arrangement established for the benefit of employees who meet certain criteria. *See* I.R.C. § 401(k); *Weaver-Adams v. Commissioner*, T.C. Memo. 2014-73, at \*4–5.

Mr. Lucas admittedly received a distribution from his 401(k) plan account in 2017. He nonetheless asserts in this Court that this distribution should be excluded from his gross income because of his diabetes. In support of this contention Mr. Lucas relies on a website that (in his view) speaks to these matters.

As an initial matter, the website Mr. Lucas relies on addresses the applicability of the early withdrawal penalty in cases of disability, which is a distinct subject from whether the distribution counts as income for those suffering from disability. More significantly, the website does not constitute legal authority, and nothing in the Internal Revenue Code, Treasury Regulations, or relevant caselaw supports Mr. Lucas's interpretation. The retirement distribution income accordingly must be included in his 2017 gross income. *See* I.R.C. §§ 61(a), 402(a).

**[\*4]** III.    *Section 72(t) Additional Tax*

"Distributions from a qualified retirement account (which includes a 401(k) account) to a taxpayer under 59½ years of age at the time of the distribution are subject to a 10% additional tax unless an exception applies." *Robertson v. Commissioner*, T.C. Memo. 2014-143, at \*5; *see also* I.R.C. §§ 72(t), 401(k), 4974(c).  Section 72(t)(2)(A)(iii) provides one such exception for a distribution "attributable to the employee's being disabled within the meaning of subsection (m)(7)."[3]  A taxpayer is considered disabled if, at the time of the disbursement, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." I.R.C. § 72(m)(7); *see also Kopty v. Commissioner*, T.C. Memo. 2007-343, 2007 WL 4142754, at \*12–13, *aff'd*, 313 F. App'x 333 (D.C. Cir. 2009); Treas. Reg. § 1.72-17A(f)(1).

For these purposes, substantial gainful activity refers to "the activity, or a comparable activity, in which the individual customarily engaged prior to the arising of the disability."  Treas. Reg. § 1.72-17A(f)(1).  The determination whether an impairment makes one unable to engage in substantial gainful activity depends on all the facts of the case, focusing primarily on the nature and severity of his impairment, as well as factors such as the individual's education, training, and work experience.  *See id.* subparas. (1) and (2).  "An individual will not be deemed disabled if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in his customary or any comparable substantial gainful activity." *Id.* subpara. (4).

Mr. Lucas' diabetes did not render him "unable to engage in any substantial gainful activity" within the meaning of section 72(m)(7) and its accompanying regulations.  Although Treasury Regulation § 1.72-17A(f)(2) identifies diabetes as an impairment that "would ordinarily be considered as preventing substantial gainful activity," it clarifies that "[a]ny impairment, whether of lesser or greater severity, must be

---

[3] Section 72(t)(2)(B) provides another exception to the early withdrawal penalty where the distribution does "not exceed the amount allowable as a deduction under section 213 . . . for amounts paid during the taxable year for medical care," but Mr. Lucas did not claim that he qualified for it.  We accordingly deem the issue forfeited. *See, e.g.*, *Rowen v. Commissioner*, 156 T.C. 101, 115–16 (2021) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005))).

**[*5]** evaluated in terms of whether it does in fact prevent the individual from engaging in his customary or any comparable substantial gainful activity." Treas. Reg. § 1.72-17A(f)(2) (flush language).  Mr. Lucas was diagnosed with diabetes in 2015 but was able to work as a software engineer for two years, including the year that he received the distribution from his 401(k) plan account, effectively treating his diabetes with a mix of insulin shots and other medications.

The record before us contains no indication that Mr. Lucas's diabetes prevented him "from engaging in his customary or any comparable substantial gainful activity" at the time of the distribution, and we conclude that his condition did "not constitute a disability within the meaning of section 72(m)(7)."  *See* Treas. Reg. § 1.72-17A(f)(4).  The distribution in this case accordingly does not qualify for the exception to the early withdrawal penalty set forth in section 72(t)(2)(A)(iii).

IV.  *Conclusion*

We conclude that Mr. Lucas's 401(k) plan account distribution is taxable and subject to the ten-percent additional tax imposed by section 72(t)(1).  The IRS's deficiency determination is sustained.

To reflect the foregoing,

*Decision will be entered for respondent.*